725 A.2d 1053

**Denise MESMER et al.**

**v.**

**The MARYLAND AUTOMOBILE INSURANCE FUND.**

**No. 50, Sept. Term, 1996.**

Court of Appeals of Maryland.

March 11, 1999.

244

Martin H. Freeman (Robert K. Jenner, Freeman & Jenner, Bethesda; David M. Kopstein, Dross, Levinstein, Perilman & Kopstein, Washington) on brief for petitioners.

Mark D. McCurdy, Asst. Atty. Gen., Annapolis, Andrew H. Baida, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore; Stanley L. Lipshultz, Victor I. Weiner, Silver Spring) on brief for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI *, RAKER and WILNER, JJ.

ELDRIDGE, Judge.

This is an action against a liability insurer based upon the insurer's allegedly erroneous denial of coverage. The issues are whether the action sounds in contract, in tort, or both, and what is the appropriate measure of damages.

I.

In January 1989 the Maryland Automobile Insurance Fund ("MAIF"), a state agency, issued an automobile liability policy on a 1981 Buick Skylark to Gladys Mesmer with personal injury liability coverage limits of $20,000.00 per person and $40,000.00 per accident. Krist Leo Salmi of Wheaton, Maryland, was the insurance agent or broker who produced the policy. The application and declaration page of the policy listed Gladys as the owner and operator of the vehicle. Gladys's daughter, Denise Mesmer, was also listed as an operator of the Buick. The application stated that both Gladys and Denise held valid Maryland driver's licenses, resided in Silver Spring, Maryland, and that Gladys had been

---

* Karwacki, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

refused automobile liability coverage by two private insurance companies.[1]

On or about July 19, 1989, Gladys contacted Salmi and informed him that "[w]e've changed vehicles." Both Gladys and Salmi stated that the matter primarily discussed was that Denise would be the primary driver of the newly acquired vehicle and that neither of them raised the issue of who was the owner of the newly acquired vehicle. Salmi secured from MAIF a new insurance policy that removed the Buick and added a 1989 Chevrolet Spectrum, without any change in coverage limits. The declaration page listed Gladys as the named insured and listed both Gladys and Denise as operators of the Chevrolet. The declaration page also included Item 8, stating that "[u]nless otherwise stated herein: (a) [t]he automobile(s) described in item 3 is (are) solely owned by the named insured. . . ." The Chevrolet, however, was not titled in either Denise's or Gladys's name. The titled owner was Robert Arthur Hyman, Gladys's future husband, with whom she and Denise lived. According to the complaint in the instant case, the Chevrolet had been purchased in the name of Mr. Hyman "[i]n order to secure financing."

On February 22, 1990, Denise, while in the District of Columbia, negligently operated the Chevrolet and caused an accident. Peggy Lyons was seriously injured in the accident. The accident was reported to MAIF, which investigated the matter for approximately two months. On April 20, 1990, MAIF notified Gladys that it was denying coverage on the ground that she did not have an insurable interest in the Chevrolet at the time the policy was issued and that, therefore, the policy was being voided as of January 31, 1990, and

---

1. For the owner of a Maryland registered automobile to be eligible to obtain an insurance policy on the automobile from MAIF, the owner must either have been refused a policy by two private automobile insurers or have had a policy nonrenewed or canceled by a private automobile insurer. See Maryland Code (1997), § 20–502 of the Insurance Article.

premium payments would be refunded. Three days later MAIF informed Hyman that the Chevrolet did not qualify as an insured vehicle under the terms of the policy and that the policy was being voided *ab initio.*

In September 1990 and again in July 1991, the attorneys representing McKeeba Lyons, mother of Peggy Lyons, contacted MAIF by letter. The first letter requested that MAIF "post its policy" to enable the injured party to "proceed against other available insurance." The second letter offered to "settle this matter as against Denise Mesmer for MAIF's policy limit of $20,000." MAIF responded to both letters but declined to enter into any negotiations concerning Peggy's claim, stating that the Chevrolet did not qualify as an insured vehicle and that there was no coverage. Neither the Mesmers, nor Lyons, nor Hyman brought a declaratory judgment action to challenge MAIF's position that there was no coverage.

Peggy filed suit in the Superior Court for the District of Columbia against Denise. MAIF was not named as a party to and did not receive notice of the action filed in the District of Columbia. On April 14, 1992, following a jury trial, a judgment for Peggy against Denise, in the amount of $19,563,-203.00, was entered.

On April 30, 1993, the instant action was filed in the Circuit Court for Montgomery County by Denise and Gladys against MAIF. Denise subsequently assigned her rights against MAIF to Peggy. The original complaint was amended to add Peggy as a plaintiff and add Salmi, the producer of the policy, as a defendant.[2] The plaintiffs sought to recover the amount of the District of Columbia judgment, attorney fees, and other

---

2. The amended complaint also stated as follows:
"D.C. has paid approximately one-half million dollars for Plaintiff Lyons' health care to date. Absent recovery by Plaintiff Lyons, D.C. will be required to pay for health care for Plaintiff Lyons for the rest of her life. Under District of Columbia law, D.C. is subrogated to the extent it has paid for Plaintiff Lyons' health care to date."

damages from MAIF and Salmi based on alleged breach of contract and negligence.

The parties filed cross motions for summary judgment. The issues presented in the motions were as follows: (1) whether the plaintiffs' claims were actions in tort or in contract; (2) whether Peggy could sue MAIF as a third-party beneficiary of Denise's policy; (3) if the claims were in tort, whether the doctrine of sovereign immunity barred a claim against MAIF for bad faith failure to settle a claim; (4) whether or not MAIF was guilty, as a matter of law, of a bad faith failure to settle a claim; (5) whether the plaintiffs' claims were barred by the statute of limitations; and (6) whether MAIF would be liable under the doctrine of respondeat superior for any negligence by Salmi.

After oral argument, the circuit court held as follows: (1) the plaintiffs' claims were in both contract and tort; (2) Peggy had standing to maintain the instant case as a third party beneficiary; (3) MAIF is a state agency and is thus cloaked with sovereign immunity in tort actions; (4) because MAIF has immunity, the issue of whether MAIF was guilty of bad faith refusal to settle the claim need not be reached, but that if it were reached, it would be a matter for the trier of fact at trial; (5) the action was not barred by the statute of limitations; and (6) since MAIF is not liable in tort because of sovereign immunity, MAIF cannot be held liable in tort under the doctrine of respondeat superior. The circuit court also held, as a matter of law, that MAIF had a contractual duty to defend Denise in the underlying tort action and that MAIF breached this duty. The Court awarded the plaintiffs the $20,000.00 policy limit and $9,673.95 in attorney fees as damages for breach of contract.

Final judgment, pursuant to Maryland Rule 2–602, was entered by the circuit court with regard to all claims against MAIF. The judgment incorporated the above-summarized rulings. The circuit court stayed all claims against Salmi pending the outcome of a timely filed appeal. A timely notice of

appeal was subsequently filed by the plaintiffs. MAIF did not cross-appeal.[3]

The plaintiffs filed a petition for a writ of certiorari in this Court which we granted prior to consideration of the case by the Court of Special Appeals. *Mesmer v. Maryland Automobile Insurance Fund*, 342 Md. 633, 679 A.2d 539 (1996).

## II.

The issues before this Court arise out of MAIF's voiding or rescinding *ab initio* the insurance policy issued to Gladys for the Chevrolet. The rescission resulted in MAIF's denial of coverage and refusal to defend the Mesmers against Peggy's claim.

The plaintiffs argue "that Appellants' claim for the excess judgment sounds in contract rather than tort," that the claim is based on the insurer's breach of the " 'duty to defend [which] is a contractual obligation,' " and that "because a claim for damages resulting from a wrongful failure to defend sounds in contract, such a claim is not even arguably barred by sovereign immunity. Sovereign immunity for contract actions has been statutorily abrogated in Maryland." (Appellants' brief at 4–5). The plaintiffs further argue that, although a tort claim based upon an insurer's wrongful failure to settle requires a "show[ing] that the carrier acted in *bad faith*," a contract claim based on the insurer's failure to defend simply requires a showing that the contract was breached. (*Id.* at 5–6). The plaintiffs go on to argue that the damages for breach of the contractual duty to defend are not confined to the policy limits and attorney fees but may properly include "the amount of an excess judgment." (*Id.* at 6–12).

The plaintiffs alternatively contend that, "[i]f this Court decides that bad faith is a necessary element of the claim for recovery of the excess judgment," and "if the Court further

---

**3.** Because MAIF did not cross-appeal, we do not have before us the question of whether MAIF breached a contractual duty, and we intimate no opinion on this issue. The trial court's holding on this issue has become final, and, therefore, we shall assume for purposes of this case that MAIF did breach its contract.

decides that the existence of that element renders this a tort claim for purposes of sovereign immunity, then" MAIF does not enjoy sovereign immunity. (*Id.* at 14). They argue that, under the legislation creating MAIF as an insurer, "MAIF was intended to function ... in a manner similar to a private insurance company" and "it is not endowed with sovereign attributes consistent with sovereign immunity." (*Id.* at 14, 21). The plaintiffs distinguish *Harrison v. Motor Vehicle Admin.*, 302 Md. 634, 648, 490 A.2d 694, 701 (1985), where this court stated that MAIF is a "State agenc[y] which [has] inherited the sovereign attributes of the State and [is] performing a governmental function." They point out that *Harrison* involved MAIF's function as successor to the Unsatisfied Claim and Judgment Fund and not MAIF's function as a carrier issuing motor vehicle insurance policies.

MAIF argues that its "failure to defend Ms. Mesmer as a result of its rescission of its insurance policy gives rise to, at most, contractual damages that are confined to the limits set forth in the [insurance] policy and the costs of defending the District of Columbia litigation." (Appellee's brief at 5). MAIF asserts that, as "Ms. Mesmer obtained counsel to represent her in the District of Columbia litigation, MAIF's failure to defend her ... could not be the proximate cause of the judgment entered against her in that litigation" (*id.* at 4). MAIF further argues that any claim for the excess judgment must be brought on a basis of the insurer's bad faith failure to settle, that such a claim against an insurer can only be made in a tort action, that MAIF is a state agency entitled to sovereign immunity in tort cases except to the extent that such immunity has been waived by the Maryland Tort Claims Act, Maryland Code (1984, 1995 Repl.Vol., 1998 Supp.), § 12–101 *et seq.* of the State Government Article, and that the plaintiffs, in making their claims, failed to comply with the requirements of the Tort Claims Act.

### III.

We agree with the plaintiffs insofar as they argue that their claims against MAIF sound exclusively in contract

rather than tort. A liability insurer's mistaken refusal to provide any defense whatsoever, on the grounds that there is no valid insurance contract or that there is no coverage under an insurance contract, gives rise to a breach of contract action against the insurer. It does not give rise to the tort action for an alleged bad faith failure to settle a third party claim against the insured. Consequently, we need not and shall not reach the issues of whether MAIF enjoys sovereign immunity from tort claims asserted against MAIF itself and whether the Maryland Tort Claims Act furnishes the only tort remedy against MAIF.

On the other hand, we disagree with the plaintiffs' contention that the amount of the excess judgment in the underlying tort case is recoverable in this contract action. Instead, the circuit court correctly held that the damages for breach of contract are limited to the policy limits and the costs of defending the underlying tort action. Therefore, we shall affirm the judgment of the circuit court.

## A.

In Maryland, insurance policies are treated like other contracts. Except as modified by statutes or regulations, the legal principles applicable to contracts generally are also applicable to insurance policies. *See, e.g., Kendall v. Nationwide,* 348 Md. 157, 165–166, 702 A.2d 767, 770–771 (1997); *Litz v. State Farm,* 346 Md. 217, 224–225, 695 A.2d 566, 569 (1997); *JMP v. St. Paul Fire,* 345 Md. 630, 634–636, 693 A.2d 832, 834 (1997); *Bailer v. Erie Insurance,* 344 Md. 515, 521–522, 687 A.2d 1375, 1378 (1997), and cases there cited.

It is a settled and "familiar proposition that not every duty assumed by contract will sustain an action sounding in tort." *Council of Co–Owners v. Whiting–Turner,* 308 Md. 18, 32, 517 A.2d 336, 343 (1986). *See also, e.g., U.S. Gypsum v. Baltimore,* 336 Md. 145, 156, 647 A.2d 405, 410 (1994); *Decoster v. Westinghouse,* 333 Md. 245, 250–251, 634 A.2d 1330, 1332–1333 (1994); *Erie Ins. Co. v. Chops,* 322 Md. 79, 84, 585 A.2d 232, 234 (1991); *Jacques v. First Nat'l Bank,* 307 Md. 527, 534, 515

A.2d 756, 759 (1986); *Matyas v. Suburban Trust Co.*, 257 Md. 339, 342–344, 263 A.2d 16, 18–19 (1970); *Heckrotte v. Riddle*, 224 Md. 591, 595–596, 168 A.2d 879, 881–882 (1961); *Otis Elevator Co. v. Embert*, 198 Md. 585, 597–598, 84 A.2d 876, 881–882 (1951).

A contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis. As explained by Chief Judge Murphy for the Court in *Wilmington Trust Co. v. Clark*, 289 Md. 313, 328–329, 424 A.2d 744, 754 (1981),

> "[w]hile a tort action in favor of a contracting party can be founded upon a duty arising out of the contractual relationship, ... the duty giving rise to the tort cause of action must be independent of the contractual obligation.... Mere failure to perform a contractual duty, without more, is not an actionable tort."

In a leading case on this point, *Heckrotte v. Riddle, supra,* 224 Md. at 595–596, 168 A.2d at 881–882, Judge Horney for the Court stated:

> "That the buyers did not ... assert an action in tort independent of contract is obvious. And, while there was an allegation of 'carelessness and negligence' on the part of the seller-builder ... it is apparent that the allegations were not so stated as to claim that the asserted negligent breach of contract was also a breach of duty imposed by law. Thus, it is clear that the second count did not state an action *ex delicto*. The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.... For it is only when a breach of contract is also a violation of a duty imposed by law that the injured party has a choice of remedies."

*See also Casper v. Chas. F. Smith & Son,* 316 Md. 573, 578, 560 A.2d 1130, 1133 (1989); *Jacques v. First Nat'l Bank, supra,* 307 Md. at 534, 515 A.2d at 759; *Matyas v. Suburban Trust Co., supra,* 257 Md. at 342–344, 263 A.2d at 18–19; *Otis Elevator Co. v. Embert, supra,* 198 Md. at 597–598, 84 A.2d at

881–882; *Slacum v. Trust Co.*, 163 Md. 350, 352–353, 163 A. 119, 120 (1932); *Samuel v. Novak*, 99 Md. 558, 567–568, 58 A. 19, 20 (1904); *Simon v. Union Hosp. of Cecil County, Inc.*, 15 F.Supp.2d 787, 800 (D.Md.1998); *Board v. Plymouth Rubber*, 82 Md.App. 9, 31, 569 A.2d 1288, 1298, *cert. denied*, 320 Md. 505, 578 A.2d 778 (1990) ("Under Maryland law, negligent breach of a contract, absent a duty or obligation imposed by a source independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort").

▬▬▬ There is no single principle or simple test for determining when a defendant's breach of a contract will also breach an independent duty and give rise to a tort action. Nevertheless, when the dispute is over the existence of any valid contractual obligation covering a particular matter, or where the defendant has failed to recognize or undertake any contractual obligation whatsoever, the plaintiff is ordinarily limited to a breach of contract remedy. It is when the defendant has proceeded on the basis that a contractual obligation exists, has undertaken that obligation, and has undertaken it in violation of the appropriate standard of care, that the plaintiff may, in some circumstances, maintain a tort action.

Some earlier cases set forth this distinction in terms of "nonfeasance" and "misfeasance." Professor Prosser has explained (William L. Prosser, *Handbook of the Law of Torts*, § 92, at 614–615 (4th ed.1971), footnotes omitted):

"The relation between the remedies in contract and tort presents a very confusing, field, still in process of development, in which few courts have made any attempt to chart a path.

\* \* \*

"The line of division which developed quite early was that between 'nonfeasance,' which meant not doing the thing at all, and 'misfeasance,' which meant doing it improperly. Much scorn has been poured on the distinction, but it does draw a valid line between the complete non-performance of

a promise, which in the ordinary case is a breach of contract only, and a defective performance, which may also be a matter of tort. In general the courts have adhered to the line thus drawn; and a failure even to begin or attempt performance of an agreement to lend money, to employ the plaintiff, to furnish transportation, to deliver goods ordered, to furnish light for a room, to obtain the dissolution of an injunction and permit the plaintiff to proceed with the construction of a road, or to attend as a physician, all are held to amount to mere breaches of contract, for which no tort action will lie."

Later, Prosser continued (*id.* at 616–618, emphasis added, footnotes omitted):

"Where the defendant has done something more than remain inactive, and is to be charged with 'misfeasance,' the possibility of recovery in tort is considerably increased.... [A] carrier remains liable in tort, as well as on the contract, for negligent injury to a passenger or for carrying him past his station, for negligent loss or damage to goods shipped, or for delay in their delivery. Here again the duty is an incident of the relation rather than the contract, and the carrier would be liable if the passenger were carried free.

"Beyond this the American courts have extended the tort liability for misfeasance to virtually every type of contract where defective performance may injure the promisee. An attorney or an abstractor examining a title, a physician treating a patient, a surveyor, an agent collecting a note or lending money *or settling a claim, or a liability insurer defending a suit,* all have been held liable in tort for their negligence.... The principle which seems to have emerged from the decisions in the United States is that there will be liability in tort for misperformance of a contract whenever there would be liability for gratuitous performance without the contract—which is to say, whenever such misperformance involves a foreseeable, unreasonable risk of harm to the interests of the plaintiff."

*See also* 3 Harper, James and Gray, *The Law of Torts,* § 18.6, at 725–730 (2d ed.1986); W. Page Keeton, *Prosser and Keeton*

*on the Law of Torts,* § 92 (5th ed.1984); Speiser, Krause and Gans, *The American Law of Torts,* §§ 1:20, 1:21 (1983); *Restatement of the Law, Second, Torts,* § 323.

Although later Maryland cases have disapproved of the "nonfeasance" and "misfeasance" terminology, we have generally recognized the distinction set forth above. Thus, in *Matyas v. Suburban Trust Co., supra,* 257 Md. at 342, 263 A.2d at 18, where the defendant arguably had a contractual obligation to remove snow from a public sidewalk but failed entirely to undertake the obligation, Judge J. Dudley Digges for this Court stated that "we will not impose tort liability on the basis of a contractual obligation that was never undertaken." The Court went on to draw a distinction between "a gratuitous or contractual undertaking which was actually begun but negligently performed" and "as is the case here, a complete failure to initiate performance of a purely contractual duty." *Ibid.*

Other cases are to the same effect. *See, e.g., Otis Elevator Co. v. Embert, supra,* 198 Md. at 597–598, 84 A.2d at 881–882 (differentiating the situation where one totally fails to perform his contract with the situation where, in the performance of the contract, one does so in a dangerous manner or creates a dangerous condition, and pointing out that the distinction is "between conduct, in breach of a contract, which constitutes only a breach of contract and conduct which also constitutes a breach of duty, arising out of the nature of the work undertaken"); *E. Coast Fr. Lines v. Cons. Gas Co.,* 187 Md. 385, 402, 50 A.2d 246, 254 (1946) ("The Gas Company is not charged with using its electric current in any dangerous manner or, by its use, creating any dangerous condition. What it is charged with is a non-performance of its contract with the City. For such non-performance the greater weight of authority is that it is liable only to the City and that it owes no duty to the general public for which it may be made responsible by an action in tort for negligence"); *Consolidated Gas Co. v. Connor,* 114 Md. 140, 156–157, 78 A. 725, 729 (1910) ("it is well settled that nonfeasance is the non-performance of a duty, for which the agent is liable only to his principal, while misfea-

sance is the improper performance of a duty, for which the agent is liable to third persons injured by such negligence. If, for example, the Gas Company in this case had failed to supply gas to the City lamps in accordance with its contract, this would have been a nonfeasance, for which the company would have been responsible only to the City. But when, in carrying out the contract, it distributes the gas through defective pipes and thus permits it to escape into the streets and houses of the City, there is manifestly involved an affirmative element of negligence amounting to misfeasance, and for this the company is liable to anyone who may suffer in consequence"); *Miller v. Schaefer,* 80 Md.App. 60, 74, 559 A.2d 813, 819–820 (1989), *aff'd,* 322 Md. 297, 587 A.2d 491 (1991) (where Judge Karwacki pointed out for the court that it is "[t]he defective performance of a contractual undertaking [which] may give rise to an action both in tort or in contract").

### B.

The above-discussed distinction, between a pure contract duty and a tort duty growing out of the manner in which a contractual obligation is undertaken, is reflected in our opinions dealing with (1) a liability insurer's breach of the insurance contract by erroneously disclaiming coverage, and (2) a liability insurer's undertaking to defend against a claim and its bad faith failure to settle the claim within policy limits. The former gives rise only to a breach of contract action; the latter gives rise only to a tort action.

### (1)

Under the typical liability insurance policy, the insurer has a duty to indemnify the insured, up to the limits of the policy, for the payment of a judgment based on a liability claim which is covered. The insurer also has a duty to defend the insured against a liability claim which is covered or which is potentially covered. The source of both duties is solely the insurance contract. As stated in *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 409, 347 A.2d 842, 851 (1975), "[t]he promise to defend the insured, as well as the promise to

indemnify, is the consideration received by the insured for payment of the policy premiums."

We have repeatedly indicated that the obligation to defend and the obligation to indemnify are entirely contractual. *See, e.g., Vigilant Insurance Company v. Luppino,* 352 Md. 481, 488, 723 A.2d 14, 17 (1999) ("An insurer's obligation to defend is contractual, and, therefore, a cause of action for breach of the duty to defend sounds in contract"), and cases there cited; *Litz v. State Farm, supra,* 346 Md. at 225, 695 A.2d at 569 ("The insurer's duty to defend is a contractual duty arising out of the terms of a liability insurance policy"); *Bailer v. Erie Insurance, supra,* 344 Md. at 520, 687 A.2d at 1377 (a claim against a liability insurer based on "a coverage issue" constitutes a "breach of contract claim"); *Aetna v. Cochran,* 337 Md. 98, 102–108, 651 A.2d 859, 861–864 (1995); *Nolt v. USF & G,* 329 Md. 52, 65, 617 A.2d 578, 584 (1993) (the duty to defend is a "contractual duty"); *Collier v. MD–Individual Practice,* 327 Md. 1, 12, 607 A.2d 537, 542 (1992) (source of the duties "to defend against claims" and "to satisfy, up to policy limits, amounts for which the insured may be liable for covered acts or omissions" are "covenant[s]" contained in liability policies); *Bankers & Ship. Ins. v. Electro Enter.,* 287 Md. 641, 649, 415 A.2d 278, 283 (1980) (the duty to defend is "a contractual duty"); *Belcher v. Gov't Employees Ins. Co.,* 282 Md. 718, 724, 387 A.2d 770, 774 (1978) (the duty to indemnify up to policy limits and the duty to defend are "both contractual obligations"); *Anderson v. Md. Casualty Co.,* 123 Md. 67, 70, 90 A. 780, 781 (1914) (where an insurer erroneously "altogether failed or refused to defend" and to indemnify, it is a "breach of contractual duty").

Since the source of the duties to defend and to indemnify are entirely contractual, a liability insurer breaches no tort duty when, upon learning of a claim, it erroneously denies coverage and refuses to undertake any defense against the claim. Our cases have not recognized any independent tort duty in this situation. Instead, the only action against the insurer is for breach of contract. This is consistent with the

general principle, discussed earlier, that "we will not impose tort liability on the basis of a contractual obligation that was never undertaken." *Matyas v. Suburban Trust Co., supra,* 257 Md. at 342, 263 A.2d at 18.

### (2)

The tort action based upon a liability insurer's wrongful failure to settle a claim against its insured within policy limits was first recognized by this Court in *Sweeten, Adm'r. v. Nat'l. Mutual,* 233 Md. 52, 194 A.2d 817 (1963). That case involved an automobile liability policy with a pertinent liability limit of $10,000 issued by the defendant insurer to Thomas Larson. Larson had been sued for injuries sustained by one Shanley as a result of Larson's negligent driving. There was no issue of insurance coverage, and the defendant insurer "undertook the exclusive defense of the action," 233 Md. at 54, 194 A.2d at 817. The tort action against Larson resulted in a $19,000 judgment in favor of Shanley, and the insurer paid $10,000 of that judgment. Larson then brought the subject action against the insurer for the $9,000 excess, alleging that the insurer had repeated opportunities to settle the case for a sum within the $10,000 policy limit but, as a result of negligence and bad faith, had refused to do so. Larson died before the action against the insurer came to trial, and his administrator was substituted. The trial court held that the administrator failed to set forth a cause of action. This Court, however, reversed, holding that the administrator had set forth a cause of action "in tort, not in contract, although arising out of a contractual undertaking." 233 Md. at 55, 194 A.2d at 818. The basis for the tort duty, according to this Court, was

"because the insurer has the exclusive control, under the standard policy, of investigation, settlement and defense of any claim or suit against the insured, and there is a potential, if not actual, conflict of interest giving rise to a fiduciary duty." *Ibid.*

The Court declined to decide in *Sweeten* whether the appropriate standard for the tort was negligence or bad faith since

the insurer conceded that the facts were sufficient to show either.

The next case in this Court involving an insurer's wrongful failure to settle a liability claim within policy limits was *State Farm v. White,* 248 Md. 324, 236 A.2d 269 (1967). That case also involved no question concerning coverage, and the insurer undertook to defend the tort action against its insured. In the course of defending the action, the insurer refused several offers to settle within policy limits, and ultimately a judgment in excess of policy limits was rendered. The insured then sued the insurer for the excess and obtained a favorable judgment. In affirming the judgment in favor of the insured, the *White* opinion quoted extensively from *Sweeten* that the basis of the action was the insurer's control over the settlement and defense of any claim and suit, that this created a potential conflict of interest giving rise to a fiduciary duty, and that " 'the liability is in tort, not in contract, although arising out of a contractual undertaking.' " *State Farm v. White, supra,* 248 Md. at 329, 236 A.2d at 271. The Court in *White* also adopted a "good faith" standard, saying (248 Md. at 332–333, 236 A.2d at 273):

"In applying the 'good faith' theory the courts have found that the presence of one or more of the following acts or circumstances may affect the 'good faith' posture of the insurer: the severity of the plaintiff's injuries giving rise to the likelihood of a verdict greatly in excess of the policy limits; lack of proper and adequate investigation of the circumstances surrounding the accident; lack of skillful evaluation of plaintiff's disability; failure of the insurer to inform the insured of a compromise offer within or near the policy limits; pressure by the insurer on the insured to make a contribution towards a compromise settlement within the policy limits, as an inducement to settlement by the insurer; and actions which demonstrate a greater concern for the insurer's monetary interests than the financial risk attendant to the insured's predicament.

\* \* \*

"Based on our review of the authorities and a wealth of cases on this question, we are persuaded that for an insurer to measure up to the good faith test, its action in refusing to settle must consist of an informed judgment based on honesty and diligence. Furthermore, the insurer's negligence, if any there be, is relevant in determining whether or not it acted in good faith."

In *Fireman's Fund v. Continental Ins. Co.*, 308 Md. 315, 318, 519 A.2d 202, 204 (1987), we re-affirmed the holdings in the *Sweeten* and *White* cases, pointing out that a liability insurer's duty to attempt to settle claims within its insureds' policy limits

"arises because standard insurance policies give the insurer the exclusive control of the investigation, settlement, and defense of claims against its insureds. These provisions create the potential for conflicts of interest between insured and insurer and thus, impose a fiduciary duty on the insurance company."

In *Medical Mutual v. Evans*, 330 Md. 1, 25–28, 622 A.2d 103, 114–116 (1993), we declined to change the principle, first set forth in *Sweeten*, that the measure of damages recoverable in the tort action based upon a bad faith failure to settle within policy limits is ordinarily the amount by which the judgment in the underlying action exceeds the amount of insurance coverage.

Most recently, in *Allstate Ins. v. Campbell*, 334 Md. 381, 396–397, 639 A.2d 652, 659 (1994), we refused to extend the tort cause of action for bad faith failure of the insurer to settle a claim within policy limits beyond the situations involved in our prior cases. In *Campbell*, the liability insurer undertook to defend the liability claim against its insured, provided an attorney to represent the insured in a tort suit, notified the insured of the possibility of an excess judgment, and declined an initial offer from the plaintiff in the tort suit to settle the case within policy limits. Upon being notified of the possibility of an excess judgment, the insured retained his own attor-

ney. Later, the liability insurer ultimately settled the underlying tort case within policy limits and obtained a release of the insured. Thereafter, the insured brought an action against the insurer to recover the costs of retaining his own attorney, relying on both a breach of contract theory and a tort theory. This Court, in an opinion by Chief Judge Murphy, held that the insurer was not liable on either theory. While recognizing that a liability insurer has a contractual duty to provide the insured with a defense, as well as a contractual duty to indemnify within policy limits, and that the damages for breach of the duty to defend will include the attorney fees incurred by the insured in defending an action, the Court emphasized that the insurer's contractual obligation "cannot be extended beyond the terms of the contract." *Allstate Ins. v. Campbell, supra,* 334 Md. at 394, 639 A.2d at 658. The Court continued (*ibid.*):

> "Thus, while it [the insurer] promises to defend Campbell [the insured] and pay for damages within policy limits, it makes no promise that it will settle the claim within policy limits; it merely reserves the right to settle if it deems it appropriate."

As to the tort theory, although recognizing "that if a liability insurer *acts improperly in defending* the insured it may become liable to the insured for the amount of judgment obtained against the insured which is in excess of the policy limits" (334 Md. at 393–394, 639 A.2d at 658, emphasis added), the Court stated that the insured's damages in such tort action "are limited to the amount of any judgment in excess of policy limits" and that the action "will not accrue prior to the entry of a judgment against the insured in excess of policy limits." 334 Md. at 396–397, 639 A.2d at 659.

In Maryland the nature of the tort action, based on a bad faith failure to settle a liability claim within policy limits, is clear from all of our cases concerning that tort from *Sweeten* through *Campbell.* The tort action can only arise when the liability insurer acknowledges coverage, or proceeds as if there were coverage, and undertakes to provide a defense to the insured. It is when the insurer undertakes to provide a

defense that it has "the exclusive control . . . of . . . settlement and defense of any claim or suit against the insured," and it is at this stage that the "potential, if not actual, conflict of interest giving rise to a fiduciary duty" comes into being. *Sweeten,* 233 Md. at 55, 194 A.2d at 818. The gist of the tort is that the insurer "acts improperly in defending the insured," *Campbell,* 334 Md. at 393, 639 A.2d at 658. This precise point was made by the Supreme Court of Oregon in *Farris v. U.S. Fidelity and Guaranty Company,* 284 Or. 453, 460, 587 P.2d 1015, 1018–1019 (1978):

> "In an action for failure to settle within the policy limits, the insurance company is charged with acting in a fiduciary capacity as an attorney in fact representing the insured's interest in litigation. The company's interest comes into conflict with that of the insured's while representing him; and, arguably, acting in its own interests to the detriment of the insured's interest while acting in such a fiduciary capacity is a tort. In the present case, [the insurer] did not undertake this fiduciary duty to represent the insured's interest in the litigation—it refused it. It did not, in the course of representing [the insured], violate its fiduciary duty arising out of sole control of the settlement. [The insurer] never undertook any fiduciary duty by purporting to act in the interests of the insured."

Moreover, many of the factors set forth in *State Farm v. White, supra,* 248 Md. at 332–333, 236 A.2d at 273, for determining whether there is a bad faith failure to settle, are pertinent only when the insurer undertakes to defend against the underlying tort claim.

Consequently, when a liability insurer erroneously takes the position that it has no contractual obligation with respect to a particular claim, and refuses to undertake any defense against the claim, it is liable only for breach of contract. The tort action based upon a liability insurer's bad faith failure to settle a claim within policy limits can arise only if the insurer undertakes to provide a defense against the claim.

## C.

The cases discussed above also compel the rejection of the plaintiffs' argument that the amount of the excess judgment can be recovered in this breach of contract action. As previously mentioned, the Court stated in the *Sweeten* case, 233 Md. at 55, 194 A.2d at 818, and reiterated in the *White* case, 248 Md. at 329, 236 A.2d at 271, that an action to recover the excess over policy limits is "in tort, *not in contract*, although arising out of a contractual undertaking." (Emphasis added).

In Maryland, the legal basis for the action to recover the amount of an excess judgment is the independent tort duty arising from the potential conflict of interest when the insurer undertakes to defend against the claim. Under the standard liability insurance policy, there is no contractual basis for the excess claim. As stated by this Court in the *Campbell* case, a liability insurer in the insurance contract "makes no promise that it will settle the claim within policy limits," 334 Md. at 394, 639 A.2d at 658. The liability insurer's indemnification promise is a promise to pay within policy limits. As also emphasized in *Campbell,* the insurer's contractual obligation "cannot be extended beyond the terms of the contract." *Ibid.*

There is utterly no support in our cases for the plaintiffs' argument that the damages for a liability insurer's breach of the promise to defend include the amount of the excess judgment. Instead, the damages for breach of the contractual duty to defend are limited to the insured's expenses, including attorney fees, in defending the underlying tort action, as well as the insured's expenses and attorney fees in a separate contract or declaratory judgment action if such action is filed to establish that there exists a duty to defend. *See, e.g., Sherwood v. Hartford,* 347 Md. 32, 43, 698 A.2d 1078, 1083 (1997) (pointing out that "the promise to defend is in the nature of litigation insurance, 'protecting the insured from the expense of defending suits brought against him,'" and distinguishing between such "expense" and the "amount of any judgment rendered in the action"); *Bailer v. Erie Insurance,*

*supra,* 344 Md. at 519–520, 687 A.2d at 1377; *Allstate Ins. v. Campbell, supra,* 334 Md. at 394, 639 A.2d at 658 (damages for breach of the duty to defend are the "expenses, including attorney fees, incurred by the insured in defending a suit"); *Nolt v. USF & G, supra,* 329 Md. at 65–68, 617 A.2d at 584–585(damages for breach of the duty to defend are counsel fees and expenses incurred in defense of the underlying tort claim plus counsel fees and expenses in an action to enforce the duty to defend); *Collier v. MD–Individual Practice, supra,* 327 Md. at 12–17, 607 A.2d at 542–545; *Mitchell v. Maryland Casualty,* 324 Md. 44, 63, 595 A.2d 469, 478 (1991) (damages for breach of the duty to defend are the insured's "attorney fees, costs, and expenses incurred in litigating the coverage issue and in defending against the [underlying] personal injury claims." The damages for the breach of the duty to indemnify are the amounts of any judgment rendered against the insured in the underlying tort case "within policy limits"); *Bankers & Ship. Ins. v. Electro Enter., supra,* 287 Md. at 649, 415 A.2d at 283.[4]

---

4. For cases in other jurisdictions recognizing the limited scope of damages for breach of the duty to defend, *see, e.g., Alabama Farm Bureau Mut. Cas. Ins. Co., Inc. v. Moore,* 349 So.2d 1113, 1116 (Ala. 1977) ("[w]e reject the proposition that an insurer's liability to pay for damages may stem from a breach of its duty to defend"); *Afcan v. Mutual Fire, Marine & Inland Ins. Co.,* 595 P.2d 638, 647 (Alaska 1979); *Hirst v. St. Paul Fire & Marine Ins. Co.,* 106 Idaho 792, 799, 683 P.2d 440, 447 (1984) ("We decline to adopt the Illinois rule" which "holds that where the insurer violates its duty to defend, the insurer is estopped to deny coverage" and is liable for "the amount recovered from the insured...." Rather, the damages for breach of the duty to defend are "the attorney fees and costs incurred by" the insured); *Gordon v. Nationwide Mutual Insurance Co.,* 30 N.Y.2d 427, 436, 334 N.Y.S.2d 601, 285 N.E.2d 849, 854 (1972), *cert. denied,* 410 U.S. 931, 93 S.Ct. 1374, 35 L.E.2d 593 (1973) ("For a breach of the obligation to defend, the measure of damage is the cost of defense to the insured and the amount of recovery, if any, against the insured within the policy limits"); *Gedeon v. State Farm Mutual Automobile Ins. Co.,* 410 Pa. 55, 59–60, 188 A.2d 320, 322 (1963) ("the recovery for breach of the covenant to defend will ordinarily be the cost of hiring substitute counsel and other costs of the defense." In seeking the amount of an excess judgment, the insured "fail[s] to distinguish between the insurer's breach of its duty to defend, *i.e.* refusal to defend, and breach of its duty to defend with due care, *i.e.* mishandling of the claim"); *Greer v.*

 Under Maryland law, the insurer's contractual undertakings in a typical liability policy are to provide the insured with a defense and to indemnify the insured for a judgment up to policy limits. The damages for breach of these promises are the insured's defense expenses, including attorney fees, and the amount of an underlying tort judgment against the insured up to policy limits. Since the insurer "makes no promise that it will settle [a] claim within policy limits," *Campbell*, 334 Md. at 394, 639 A.2d at 658, no breach of contract damages are available for violation of any duty to settle a claim within policy limits. Instead, any duty to settle within policy limits is strictly a tort duty which only arises when the insurer undertakes to provide a defense. The damages for breach of that duty may be recovered only in a tort action.

### D.

 Finally, we note that insureds and tort claimants are not without a remedy when a liability insurer erroneously disclaims coverage and refuses to undertake a defense against a tort claim. Although declaratory judgment actions finally determining insurance coverage in advance of the underlying tort suits may not be favored, such actions are appropriate when, as in the present situation, the coverage issue is separate and distinct from the issues involved in the underlying

---

*Northwestern National Ins. Co.*, 109 Wash.2d 191, 202–203, 743 P.2d 1244, 1249–1250 (1987).

There are, however, cases to the contrary, taking the position that the amount of an excess judgment can be recovered as contract damages resulting from the insurer's breach of the duty to defend. *See, e.g., Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 660–661, 328 P.2d 198, 202 (1958); *Conway v. Country Casualty Ins. Co.*, 92 Ill.2d 388, 65 Ill.Dec. 934, 442 N.E.2d 245 (1982); *Glenn v. Fleming*, 247 Kan. 296, 313, 799 P.2d 79, 90 (1990); *Lujan v. Gonzales*, 84 N.M. 229, 236, 501 P.2d 673, 680, *cert. denied*, 84 N.M. 219, 501 P.2d 663 (1972). The holdings in this latter group of cases, however, cannot be squared with the prior Maryland cases concerning the breach of the contractual duty to defend and the breach of the tort duty to settle a claim in good faith once a defense is undertaken.

tort action,[5] or when "the allegations in the underlying tort claims 'obviously constitute a patent attempt to recharacterize, as negligent, an act that is clearly intentional,' "[6] or to determine whether there is a potentiality of coverage and thus a duty to defend.[7] Such declaratory judgment actions can be brought by the insured, or by a putative insured, or by the tort claimant. *Harford Mutual v. Woodfin,* 344 Md. 399, 412–413, 687 A.2d 652, 658–659 (1997), and cases there cited.

■■■■ Thus, when MAIF notified the Mesmers and the attorney for Peggy Lyons in 1990 that there was no coverage, either the Mesmers or Peggy Lyons or all of them could have brought a declaratory judgment action against MAIF to determine the coverage issue. If they had prevailed in such action, MAIF would have been required to undertake a defense. Upon MAIF's undertaking that defense, the tort duty to act in good faith to settle the claim within policy limits would have arisen. The plaintiffs in the present case, however, chose to forego this declaratory judgment remedy against MAIF.

*JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. APPELLANTS TO PAY COSTS.*

---

5. *See, e.g., Vigilant Insurance Co. v. Luppino,* 352 Md. 481, 493, 723 A.2d 14, 19 (1999); *Litz v. State Farm,* 346 Md. 217, 233–235, 695 A.2d 566, 573–575 (1997); *Harford Mutual v. Woodfin,* 344 Md. 399, 412, 687 A.2d 652, 658 (1997); *Am. Motorists Ins. Co. v. ARTRA Group, Inc.,* 338 Md. 560, 593, 659 A.2d 1295, 1311 (1995); *Chantel Associates v. Mt. Vernon,* 338 Md. 131, 147–149, 656 A.2d 779, 787–788 (1995); *Washington Transit v. Queen,* 324 Md. 326, 333 n. 6, 597 A.2d 423, 426 n. 6 (1991); *St. Paul Fire & Mar. Ins. v. Pryseski,* 292 Md. 187, 193–196, 438 A.2d 282, 285–287 (1981).

6. *Pettit v. Erie,* 349 Md. 777, 780, 709 A.2d 1287, 1289 (1998), quoting *Allstate Ins. Co. v. Atwood,* 319 Md. 247, 253, 572 A.2d 154, 157 (1990). *See also Lititz Mutual Insurance Co. v. Bell,* 352 Md. 782, 724 A.2d 102 (1999).

7. *See, e.g., Vigilant Insurance Co. v. Luppino, supra,* 352 Md. at 493, 723 A.2d at 19; *Litz v. State Farm, supra,* 346 Md. at 225–232, 695 A.2d at 569–573. *Sheets v. Brethren Mutual,* 342 Md. 634, 679 A.2d 540 (1996); *Aetna v. Cochran,* 337 Md. 98, 651 A.2d 859 (1995).