UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SUN-LITE GLAZING CONTRACTORS,
INCORPORATED, A Maryland
Corporation,

> *Plaintiff-Appellant,*

v.

J. E. BERKOWITZ, L.P., A Delaware
Limited Partnership; A. BERKOWITZ
& COMPANY, INCORPORATED, A
Pennsylvania Corporation,

> *Defendants-Appellees.*

No. 01-1914

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Frederic N. Smalkin, Chief District Judge.
(CA-00-3076-S)

Argued: May 9, 2002

Decided: June 20, 2002

Before WILKINSON, Chief Judge, and WILLIAMS and
KING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Herman Martin Braude, BRAUDE & MARGULIES,
P.C., Washington, D.C., for Appellant. Rebecca Anne Donnellan,

DILWORTH PAXSON, P.L.L.C., Washington, D.C., for Appellees.
**ON BRIEF:** Michael B. Beard, BRAUDE & MARGULIES, P.C.,
Washington, D.C., for Appellant. Joel F. Brenner, DILWORTH PAX-
SON, P.L.L.C., Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

## OPINION

PER CURIAM:

Sun-Lite Glazing Contractors, Inc. appeals the district court's entry
of judgment in favor of J.E. Berkowitz, L.P. and A. Berkowitz &
Company (collectively, Berkowitz) on Sun-Lite's breach of contract
and negligence claims. Finding no reversible error, we affirm.

### I.

Grunley Construction Company, a prime contractor, entered into a
contract with the United States General Services Administration
(GSA) for the renovation of the George H. Fallon federal office build-
ing in Baltimore, Maryland. Included in the prime contract was the
replacement of the exterior windows of the 20-story office building.
In 1995, Grunley subcontracted the window replacement portion of
the prime contract to Sun-Lite. Sun-Lite, in turn, contracted with Ber-
kowitz early in 1996 to manufacture and supply the windows.

Berkowitz manufactured and supplied four varieties of windows
for the office building: GL1, GL1A, GL2, and GL2A.[1] The GL2 win-
dow, which is the only variety at issue in this appeal, consisted of two
panes of glass hermetically sealed with an air space between the

---

[1]Berkowitz refers to these as "Windou" units. (J.A. at 191.) The four
varieties were of two basic types: clear glass over clear glass and bronze
glass over low-emission glass. The GL2 windows were of the latter type.

panes. One pane was coated with a special low-emission coating, which was designed to absorb ultraviolet radiation and enhance the energy efficiency of the window. The specifications of the prime contract required the pane with this special coating to be placed on the inside of the building.

During the manufacturing process, Berkowitz affixed stickers to the GL2 windows that advised Sun-Lite, as the installer, to "Glaze this side in." (J.A. at 8.) In June 1999, GSA inspectors examined the office building and determined that the GL2 windows had been installed backwards, with the special low-emission coating on the outside of the building. To meet the specifications of the prime contract, Sun-Lite was required to remove and reinstall the GL2 windows so that the pane with the special coating was placed on the inside of the building.

On October 13, 2000, Sun-Lite filed a complaint against Berkowitz in the United States District Court for the District of Maryland, alleging negligence and breach of contract arising out of Berkowitz's placement of the stickers on the incorrect pane and seeking damages for the cost of removal and re-installation of the windows.[2] On February 2, 2001, after filing a responsive pleading, Berkowitz filed a motion to dismiss, which the district court construed as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

The district court granted judgment on the pleadings in favor of Berkowitz on the negligence claim and granted in part and denied in part judgment on the pleadings in favor of Berkowitz on the breach of contract claim. The partial dismissal of the breach of contract claim was based upon the district court's conclusion that the four-year statute of limitations period provided by Maryland law governing actions for breach of contract and warranties had expired. Sun-Lite filed a motion for reconsideration, claiming that the dates that the windows were tendered were in dispute, and the district court granted reconsid-

---

[2]Berkowitz ultimately disputes that the stickers were placed on the wrong pane, but we assume for purposes of this appeal that Sun-Lite's allegation is true.

eration on the partial dismissal of the breach of contract claim for further discovery as to the dates of tender.

After discovery, Berkowitz filed a motion for summary judgment with respect to the breach of contract claim, claiming that the statute of limitations barred the action, or, in the alternative, that the action was barred by the contract's disclaimer of warranties. On June 18, 2002, the district court granted Berkowitz's motion on the latter rationale. Sun-Lite filed a timely notice of appeal.

## II.

Sun-Lite first contends that the district court erred by granting judgment on the pleadings in favor of Berkowitz with respect to Sun-Lite's negligence claim. We review de novo the district court's grant of judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), applying the same standard as for motions made pursuant to Rule 12(b)(6). *Burbach Broadcasting Co. v. Elkin Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). To uphold a dismissal for judgment on the pleadings, we must take the allegations in the complaint as true and conclude that Sun-Lite, as the non-moving party, can prove no set of facts in support of its claim that would entitle it to relief. *See id.*; *Bruce v. Riddle*, 631 F.2d 272, 273-74 (4th Cir. 1980).

In its initial memorandum opinion granting judgment on the pleadings, the district court correctly noted that Maryland courts consistently have held that there is no recovery under a negligence theory for purely economic losses, absent a risk of death, personal injury, or destruction of tangible property. *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 634 A.2d 1330, 1333 (Md. 1994); *Copiers Typewriters Calculators v. Toshiba Corp.*, 576 F. Supp. 312, 326 (D. Md. 1983) (applying Maryland law and concluding that negligence cause of action was foreclosed by economic loss doctrine where the purchaser of photocopying machines sought recovery for the failure of the defective copiers to perform adequately). The Maryland Special Court of Appeals has explained:

> It is generally said that a contractor's liability for economic loss is fixed by the terms of his [or her] contract. Tort liability is in general limited to situations where the conduct of

the builder causes an accident out of which physical harm occurs to some person or tangible thing other than the building itself that is under construction.

*Council of Co-Owners of Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.*, 517 A.2d 336, 344 (Md. 1986). Sun-Lite concedes that the alleged defect in the labeling of the windows did not create a risk of death, personal injury, or destruction of tangible property, but it contends that the economic loss doctrine is inapplicable because Sun-Lite's negligence claim is one of negligent misrepresentation, which is an exception to the general rule barring tort recovery for pure economic loss. In the district court's memorandum opinion denying reconsideration on the dismissal of the negligence claim, it acknowledged negligent misrepresentation as an exception to the economic loss doctrine but concluded that Sun-Lite could not establish the elements of the claim as a matter of law.

The principal elements of the tort of negligent misrepresentation are as follows:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) the defendant intended that the statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, took action in reliance on the statement; and (5) the plaintiff suffered damage proximately caused by the defendant's negligence.

*Prudential Securities, Inc. v. E-Net, Inc.*, 780 A.2d 359, 380 (Md. Ct. Spec. App. 2001) (internal quotation marks omitted). To establish the first element of a negligent misrepresentation claim, Maryland jurisprudence requires that the alleged duty be independent of any contractual obligation. Thus, "the mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action in tort." *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961); *see also Mesmer v. Maryland Auto. Ins. Fund*, 725 A.2d 1053, 1058 (Md. 1999) ("A contractual obligation, by itself, does not create a tort duty. Instead the duty giving rise to a tort action must have some independent basis.").

Applying this caselaw, this circuit has made clear that we will not countenance a negligent misrepresentation claim premised only upon a breach of a contractual obligation when the contract does not provide for the bringing of such a claim and the parties are "equally sophisticated." *Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 98 (4th Cir. 1993) ("Equally sophisticated parties who have the opportunity to allocate risks to third party insurance or among one another should be held to only those duties specified by the agreed upon contractual terms and not to general tort duties imposed by state law." (internal quotation marks omitted)).

Despite Sun-Lite's protestations to the contrary, its negligent misrepresentation claim is virtually indistinguishable from the claim under consideration in *Martin Marietta*. Because Sun-Lite does not contend that it was in an inferior bargaining position vis-a-vis Berkowitz and is unable to establish that Berkowitz had a duty, independent from its contractual obligations, regarding the placement of the stickers on the windows, Sun-Lite's negligent misrepresentation claim fails as a matter of law.[3] Were we to recognize the viability of a negligent misrepresentation claim on the facts alleged by Sun-Lite, we would not only ignore settled precedent interpreting Maryland law, we would allow a garden variety breach of contract claim to be converted into a negligence claim, thereby nullifying the parties' agreed upon allocations of risk. Thus, we have no difficulty concluding that the district court correctly granted judgment on the pleadings in favor of Berkowitz with respect to Sun-Lite's negligence claim.

## III.

Sun-Lite next contends that the district court's grant of summary

---

[3]The cases cited by Sun-Lite in support of its contrary proposition are inapposite, in that each involved a fiduciary duty, or some other duty, independent of the contract. *Noble v. Bruce*, 709 A.2d 1264, 1268-69 (Md. 1998) (recognizing a tort duty of care towards clients for professionals, such as attorneys); *Shofer v. Stuart Hack Co.*, 723 A.2d 481, 487 (Md. Ct. Spec. App. 1999) (involving fiduciary duty of a pension plan administrator). No such duty has been established here; instead, Sun-Lite's negligent misrepresentation claim is premised solely on the alleged contractual duties undertaken by Berkowitz.

judgment in favor of Berkowitz on Sun-Lite's breach of contract claim was improper because it was based upon the erroneous legal conclusion that the parties' contract contained a warranty provision disclaiming implied warranties.[4] We review de novo the district court's entry of summary judgment, viewing the facts in the light most favorable to Sun-Lite, as the non-moving party.

During the negotiation of the final purchase order, Berkowitz provided Sun-Lite with a one-page document entitled "Warranty." (J.A. at 191.) The document referenced Sun-Lite's order for "dual seal, IGCC Level A windows" for the "GSA Fallon Office Building," and it warranted that the windows "were free from material obstruction of vision as a result of dust or film formation on the internal glass surfaces caused by failure of the hermetic seal due to faulty manufacturing of the unit by J.E. Berkowitz, L.P." (J.A. at 191.) The warranty extended for a period of ten years. The document also included the following disclaimer:

> [BERKOWITZ] MAKES NO OTHER EXPRESS OR
> IMPLIED REPRESENTATION OR WARRANTY OF

---

[4]As Sun-Lite acknowledges in its opening brief, Sun-Lite's assignment of error does not turn on any disputed facts but rather on the proper interpretation and construction of the parties' agreement. (Appellant's Br. at 7 ("Each of these determinations [that no cause of action existed in tort and that the warranty was part of the contract] are findings of law . . . .")); (Appellant's Br. at 15 ("Construction of a written contract is a question of law . . . .")). Thus, Sun-Lite has not demonstrated the existence of any genuine issues of material fact that render summary judgment inappropriate with respect to its breach of contract claim. *World-Wide Rights Ltd. Partnership v. Combe, Inc.*, 955 F.2d 242, 245 (4th Cir. 1992) (providing a framework for determining whether summary judgment is appropriate in a breach of contract action and concluding that when the action involves undisputed evidence that is, as a matter of law, "dispositive of the interpretive issue," summary judgment is appropriate); *Burgin v. OPM*, 120 F.3d 494, 497-98 (4th Cir. 1997) ("[T]he essential question is one of the interpretation of the contract's language, a question of law clearly within the competence of courts."); *cf. Mitchell v. AARP Life Ins. Program*, 779 A.2d 1061, 1069 (Md. Ct. Spec. App. 2001) ("The interpretation of a written contract is generally a question of law for the court . . . .").

ANY KIND REGARDING WINDUO, WHETHER AS TO
MERCHANTABILITY, FITNESS FOR A PARTICULAR
PURPOSE OR USE, OR ANY OTHER MATTER.[5]

(J.A. at 191.)

Significantly, Sun-Lite concedes that it received the document containing the limited warranty and disclaimer and that it submitted a Purchase Order after receiving the document without indicating any disagreement with the terms of the warranty.[6] In response to the Purchase Order, Berkowitz sent Sun-Lite an acknowledgment, which stated, "[t]his acknowledgment is subject to the Limited Warranty at the end of this order." (J.A. at 194.) Again, Sun-Lite expressed no disagreement with the terms of the warranty or its inclusion in the contract. Thus, because Sun-Lite was made aware of the limited warranty and the disclaimer prior to submitting its offer, was reminded of the warranty in Berkowitz's acceptance, and never objected to its inclusion in the contract, the limited warranty clearly formed "part of the basis of the bargain" and was included in the contract. *See* Md. Code Ann., Com. Law I § 2-313 (1997) (providing that express warranties are created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain"); § 2-313 cmt. 7 (noting that the timing of the making of the express warranty "is not material" to the question of whether the warranty became part of the "basis of the bargain"); cmt. 3 (illustrating that warranties made during contract negotiations generally form part of the "basis of the bargain").

Moreover, Sun-Lite concedes that the parties' contract includes the

---

[5]As the district court noted, "it is hornbook U.C.C. law that," as between merchants, "a seller may exclude the implied warranty of merchantability by a written exclusion that mentions merchantability and is conspicuous." (J.A. at 153 (citing Md. Code Ann., Com. Law I, § 2-316(2) (1997).)

[6]In its memorandum opinion, the district court stated that the Purchase Order submitted by Sun-Lite and the Warranty submitted by Berkowitz were both dated April 23, 1996. We note, however, that the parties agree that this statement was erroneous with respect to the date of the Purchase Order, which they agree was dated May 3, 1996.

plans and specifications of the prime contract between GSA and Grunley. (Appellant's Br. at 17.) Section 1.8 of those specifications contains a warranty provision that requires the manufacturer of the glass products to "submit a written warranty . . . agreeing to furnish replacements for those coated glass units that deteriorate . . . *Warranty covers only deterioration due to normal conditions of use and not to handling, installing, and cleaning practices contrary to glass manufacturer's published instructions*." (J.A. at 173 (emphasis added).) Similarly, subsection (g) of Federal Acquisition Regulation (FAR) 52.246-21 provides that the prime contractor should "obtain [from its subcontractors and suppliers] all warranties that would be given in normal commercial practice." FAR 52.246-21, codified at 48 C.F.R. 52.246-21 (2001). No other warranty was submitted by Berkowitz, and Berkowitz provided undisputed evidence that the limited warranty is one that complies with "normal commercial practice." (J.A. at 561-62.) Accordingly, the applicable regulations, as well as the specifications of the prime contract, require the submission of a warranty like that submitted by Berkowitz.[7]

Finally, Sun-Lite argues that the limited warranty was excluded

---

[7]Sun-Lite argues that Berkowitz was not required to submit a warranty pursuant to the specifications because the warranty of construction found in FAR 52.246-21 was incorporated into the agreement. This argument misapprehends the plain text of FAR 52.246-21, which authorizes the following warranty to be included in the contract solicited by the contracting officer:

> In addition to any other warranties in this contract, *the Contractor warrants*, . . . that work performed under this contract conforms to the contract requirements and is free from any defect in equipment, material, or design furnished, or workmanship, *performed by the Contractor or any subcontractor or supplier at any tier*.

FAR 52.246-21 (emphasis added). By distinguishing the "Contractor" from the "subcontractor" and the "supplier," the plain language of this FAR provision makes clear that the provision imposes warranty requirements on the *prime contractor*. Thus, the FAR warranty of construction renders Grunley, as the prime contractor, responsible for any faulty work done by its subcontractors or suppliers, but it does not impose any warranty requirements on Berkowitz.

from the parties' contract by an integration clause in a Joint Pay Agreement between Sun-Lite, Berkowitz, and Grunley. The Joint Pay Agreement was entered into after the exchange of the Purchase Order and the acknowledgment. It established Grunley's obligations with respect to payment of the subcontractors and suppliers and stated, "Berkowitz and Sun-Lite Glazing acknowledge that the attached Purchase Order is the complete contract between the parties." (J.A. at 196.) As noted above, however, Sun-Lite concedes that the specifications of the prime contract were included in the parties' agreement by way of reference in the Purchase Order. *Supra* at 8. Those specifications, in turn, require the submission of a warranty meeting some minimum standards, but they expressly leave to the manufacturer's discretion many of the terms of the warranty to be submitted. (J.A. at 173.) Insofar as the contract, which Sun-Lite agrees includes the incorporated portion of the specifications, facially is incomplete because it requires the submission of an additional document, namely, a limited warranty like that submitted by Berkowitz, any argument that the integration clause prohibits consideration of the limited warranty lacks merit.

In sum, the undisputed evidence shows that the limited warranty was conspicuous and unambiguous, Sun-Lite received the warranty prior to submitting its Purchase Order, was again made aware of the warranty in Berkowitz's acknowledgment, never evinced any disagreement as to the terms of the warranty or the warranty's inclusion in the contract, and agrees that the contract included the specifications requiring such a warranty. Thus, the district court correctly determined, as a matter of law, that the limited warranty was part of the basis of the bargain and was included in the contract. Because Sun-Lite's breach of contract claim is premised exclusively upon breach of warranty, and Berkowitz effectively disclaimed all implied and express warranties other than the warranty for obstruction of vision, *see supra* at 7, the district court correctly granted summary judgment in favor of Berkowitz on the breach of contract claim.[8] Indeed, Sun-

---

[8]As the district court noted, even if the disclaimer of the implied warranty of merchantability were ineffective, the warranty provides that the limited, exclusive remedy for any breach is replacement of the nonconforming goods or refund of the purchase price. This limited, exclusive remedy is valid under Md. Code Ann., Com. Law I § 2-719 (1997), and it forecloses the underlying legal action for consequential damages.

Lite does not argue that its breach of contract claim is viable if the district court properly found the limited warranty to have been included in the contract.

## IV.

For the foregoing reasons, we affirm the district court's entry of judgment in favor of Berkowitz with respect to Sun-Lite's claims of negligence and breach of contract.

*AFFIRMED*