**Stephen L. MOWBRAY, Plaintiff**

v.

**Rajai ZUMOT, et al., Defendants.**

**Civil No. L–06–1606.**

United States District Court, D. Maryland.

Jan. 30, 2008.

---

555

Matt P. Lavine, Law Office of Matt P. Lavine, Columbia, MD, for Plaintiff.

Richard Timothy Colaresi, Karpinski Colaresi and Karp PA, Baltimore, MD, for Defendant.

## MEMORANDUM

BENSON EVERETT LEGG, Chief Judge.

Plaintiff Stephen L. Mowbray ("Mowbray") filed this action against Rajai Zumot ("Zumot"), Mohammed El–Rashed ("El–Rashed"), Rainbow Holdings LLC ("Rainbow") and Salt LLC ("Salt") (collectively, "Defendants") in the Circuit Court for Baltimore City on May 12, 2006. Mowbray seeks damages from all four Defendants for breach of contract in connection with the sale of a vacant apartment building. He also alleges negligent misrepresentation on the part of Zumot and El–Rashed. The case was timely removed to this Court on grounds of diversity of citizenship.

Now pending are the parties' cross-motions for summary judgment. The Court held a hearing on the motions on November 26, 2007 [1] and is now prepared to issue its ruling. For the following reasons, Mowbray's motion is DENIED. The Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I. Background

On December 31, 2002, Mowbray entered into an agreement with Park Avenue LLC to purchase a Baltimore City apartment building known as the Brexton (hereinafter "Land Purchase Agreement"). Zumot signed the agreement in his capacity as a member of Park Avenue LLC.

The Land Purchase Agreement called for settlement to occur on or before May 1, 2003. Section 8 of the agreement states that "[a]t the settlement[,] Seller shall deliver to Purchaser ... exterior masonry, windows, new roof and scaffolding paid for by Seller." [2] By the time the agreement was executed, a contractor retained by Zumot had already completed work on the Brexton's roof. *Zumot Dep.* 58–59. Work on the windows, however, had yet to begin, and would be delayed well into 2003. Because of these delays, the parties agreed on April 29, 2003 to extend the settlement date to July 31. On August 1, with the work still unfinished, settlement was postponed indefinitely until repairs to the windows were complete.

On August 19, 2003, Mowbray sent Zumot an email complaining about the quality of the work on the windows. In response to Mowbray's concerns, Zumot orally assured him the problem "was going to be taken care of." *Zumot Dep.*, 276–277. According to Mowbray, Zumot informed

---

1. On December 4, 2007, Mowbray filed an unsolicited "Post–Hearing Brief" (Docket No. 25), to which the Defendants responded on December 10, 2007 (Docket No. 26). Neither of these filings was requested or authorized, and both are hereby stricken.

2. A handwritten addendum further provides: "Notwithstanding anything to the contrary, the Purchaser is acquiring this property with the exterior complete to the satisfaction of the Historical Society of Baltimore, Maryland (excluding front door and entrance), including new roof, brickwork, chimney, and windows. Interior conveyed as-is."

him in early November that "he had completed the work of replacing the roof and windows[.]" *Affidavit of Stephen L. Mowbray*, 1.

Settlement finally occurred on November 10, 2003. On that date, the parties executed three documents which fundamentally altered the nature of the transaction. First, Mowbray executed an "Agreement of Sale" with Rainbow, Salt, and El–Rashed, the collective owners of Park Avenue LLC. Unlike the 2002 Land Purchase Agreement, which transferred ownership of the Brexton directly from Park Avenue LLC to Mowbray, the Agreement of Sale structured the acquisition as a purchase of 100% of the membership interests in Park Avenue LLC. Zumot signed the agreement in his capacity as "Executive Officer" and "Member" of Rainbow and Salt, respectively, but was not a party to the contract in his individual capacity.

Although the Agreement of Sale converts the acquisition from a sale of real property into a transfer of membership interests, it nonetheless incorporates the terms of the Land Purchase Agreement.[3] Accordingly, the provisions in the Agreement of Sale addressing risk of loss, conditions precedent to closing, and representations and warranties all continue to treat the transaction as one involving real property. In Paragraph 11(a)(xviii), the Sellers represent that all "[w]ork on the [Brexton] done during [Park Avenue LLC's] ownership through the date of Closing has been completed in accordance with all applicable laws[,] and all sums due and payable under the Contracts have been paid in full."[4]

The second document executed at settlement was an "Assignment of Membership Interests" agreement. The agreement lists Rainbow, Salt, and El–Rashed as "Seller," and Brexton LLC and Park & Tyson LLC as "Purchaser." Mowbray was the sole member of each of the latter two companies. Pursuant to the agreement, 100% of the membership interests in Park Avenue LLC was transferred from Rainbow, Salt, and El–Rashed to Brexton and Park & Tyson.

The third and final settlement document was a "Guaranty Agreement" between Zumot (as "Guarantor") and Mowbray and Park Avenue LLC. In Section 1 of the Agreement, Zumot guarantees payment of "any and all sums due and owing to the Purchaser [ ] and[,] after Closing, the Company[,] under Section 11(c) of the Membership Interest Purchase Agreement."[5] Section 1 further provides that the "Purchaser, and after Closing, the Company[,] shall have the same right to pursue any claims against [Zumot] that it would have against any [S]eller." Pursuant to Section 10 of the Agreement, however, Zumot's liability is limited to $250,000.

Mowbray visited the Brexton at least twice prior to settlement. *Mowbray Dep.*, 51–53; 78–80. During these visits, he was able to enter the building and climb to the top of the stairs, and both he and his construction associate—an individual

---

**3.** To that end, Paragraph 24 of the Agreement of Sale provides that "[e]xcept to the extent modified by this Agreement, the terms and provisions of the Land Purchase Agreement shall remain in full force and effect."

**4.** In addition, Paragraph 11(c) provides that "Each Seller ... agrees to indemnify, defend and hold harmless Purchaser, and ... after Closing, the Company[,] from and against all claims ... damages, costs and expenses ...

which relate to matters ... arising ... on or before the Closing but not after the Closing, which are based upon any breach of the Seller's representations, warranties, or covenants set forth herein."

**5.** Because the "Assignment of Membership Interests Agreement" does not contain a Section 11(c), the parties agree that the Guaranty Agreement is here referring to the Agreement of Sale. *See* FN 5, *supra.*

named Douglas Stansbury—were able to inspect the roof and windows. On one of these occasions, Mowbray and Stansbury met with two members of the Maryland Historical Trust, who informed them that the work on the roof and windows complied with historical society requirements. *Id.*, 54–55.

In early 2004, Mowbray observed water leaking from the Brexton's roof and windows. He also saw that pigeons had entered the building through gaps in the roof. Mowbray informed Zumot of these developments and was referred to the subcontractor who performed the work on the roof. After consulting with the subcontractor on Mowbray's behalf, Stansbury concluded that he was unqualified for the job and that the work on the roof had been performed incompetently.

On November 4, 2005, Mowbray sent a letter to Zumot alleging that "the sellers of Park Avenue LLC" had failed "to deliver the [Brexton] with properly installed replacement windows and a new roof and gutter system, as required by the sales agreements." As compensation for these deficiencies, Mowbray demanded $250,000 pursuant to Zumot's obligations under the Guaranty Agreement. When Zumot failed to respond, Mowbray filed this lawsuit.

Mowbray's complaint contains seven counts. In Counts I–III, he alleges that Zumot, El–Rashed, and Rainbow and Salt, respectively, breached the Agreement of Sale by failing to repair the Brexton's roof and windows in accordance with the Land Purchase Agreement. Counts IV and V allege negligent misrepresentation by Zumot and El–Rashed, respectively, in connection with the Agreement of Sale's warranty that all work performed on the Brexton was completed prior to settlement. Mowbray further contends that Zumot is liable for negligent misrepresentation in connection with his oral assurances that the repairs to the Brexton would be "taken care of." Finally, Counts VI and VII allege that Zumot is liable for breach of contract and negligent misrepresentation pursuant to the terms of the Guaranty Agreement.

At the close of discovery, both Mowbray and the Defendants filed motions for summary judgment. The motions are now ripe for decision.

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (recognizing that trial judges have an "affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). A material fact is one that may affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See, e.g., Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

If, as in this case, both parties file motions for summary judgment, the Court applies the same standard of review. *McCready v. Standard Ins. Co.*, 417 F.Supp.2d 684, 695 (D.Md.2006), *citing Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991). When ruling on cross-motions for summary judgment, the Court must consider each motion "sepa-

rately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

### III. Discussion

#### A. *Mowbray's Motion for Summary Judgment:*

Mowbray has moved for summary judgment on both his breach of contract and negligent misrepresentation claims. We take up each of his arguments below.

##### i. *Breach of Contract*

■ According to Mowbray, the undisputed facts establish that the Defendants breached the Agreement of Sale by failing to make the repairs specified in the 2002 Land Purchase Agreement. By way of review, the Land Purchase Agreement required Park Avenue LLC, as the entity transferring the Brexton to Mowbray, to deliver a new roof and windows at settlement. This obligation was carried forward to El–Rashed, Rainbow and Salt (as "Seller") pursuant to the Agreement of Sale, which incorporates the Land Purchase Agreement and represents that all work on the Brexton performed during Park Avenue's ownership "has been completed in accordance with all applicable laws[.]." *Def.'s Exhibit 5*, ¶ 11(a)(xviii).[6]

After reviewing the record before us, we conclude that there are material ambiguities in the provisions of the Land Purchase Agreement requiring the Seller to make repairs to the Brexton prior to settlement. The provisions that concern us are Section 8 as well as the handwritten addendum, both of which state that Mowbray is acquiring the Brexton with a "new" roof and windows. According to Mowbray, this language creates an express warranty[7] that the repairs to the roof and windows will comply with industry standards. The Defendants disagree, insisting that the agreement makes no warranties concerning the quality or durability of the work.

■ Both of these interpretations are plausible. We conclude, therefore, that the "new roof and windows" language contained in the Land Purchase Agreement is ambiguous. *See Diamond Point v. Wells Fargo*, 400 Md. 718, 929 A.2d 932, 951 (2007) ("A contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more then one meaning.") (Internal quotation omitted). When ambiguity is found in a contract, "it becomes a question of fact to decipher the intent of the parties in forming the instrument."

**6.** This representation survived the Closing pursuant to Paragraph 11(c) of the Agreement of Sale, in which the Sellers promise to indemnify and/or defend Mowbray (and, after Closing, Park Avenue LLC) from and against all costs and expenses arising out of any breach of the Seller's representations and warranties. Our conclusion on this point is reinforced by Paragraph 11(d), which provides that the Purchaser's right to make a claim against the Seller for breach of representation, warranty, or covenant shall expire if a "Notice of Claim" is not presented to the Seller within two years. Paragraph 11(d) obviously contemplates that some breach of warranty claims will survive the Closing, and it would be nonsensical for us to hold that the representations in Paragraph 11(a)(xviii) were extinguished by the very instrument that created them in the first place. Accordingly, although the warranties in a land sale contract ordinarily merge into the deed at Closing, here they survived the Closing in accordance with the Agreement of Sale.

**7.** Because we are dealing with a sale of commercial property, there are no *implied* warranties in the agreements through which Mowbray assumed ownership of the Brexton. *See, e.g., Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 642 A.2d 180, 188 n. 7 (1994). ("[T]he common law rule of caveat emptor, although legislatively abrogated in the context of residential property, is still applicable in Maryland with regard to the sale of commercial property.")

*City of Bowie v. Mie Properties, Inc.,* 398 Md. 657, 922 A.2d 509, 525 (2007) (Internal citations omitted). This task is best performed by the jury at trial. Accordingly, we hold that Mowbray is not entitled to summary judgment on his breach of contract claim.

ii. *Negligent Misrepresentation*

■ Mowbray also argues that the undisputed testimony establishes that Zumot and El–Rashed are guilty of negligent misrepresentation. In support of this argument, Mowbray points to the Agreement of Sale's warranty that all repairs to the Brexton were completed prior to settlement, as well as to Zumot's statements in the fall of 2003 that the work on the Brexton would be taken care of. *See Pl.'s Reply,* 8. According to Mowbray, the "falsity [of these statements] satisfies the tort of misrepresentation." *Id.*

■ In order to prevail on a claim for negligent misrepresentation in Maryland, a plaintiff must establish that: (1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) the defendant intended that his statement be acted upon by the plaintiff; (3) the defendant had knowledge that his statement would be acted upon by the plaintiff; (4) the plaintiff justifiably took action in reliance on the defendant's statement; and (5) the plaintiff suffered damage proximately caused by the defendant's negligence. *See Odyssey Travel Center, Inc. v. RO Cruises, Inc.,* 262 F.Supp.2d 618, 626–27 (D.Md.2003); *Griesi v. Atlantic General Hospital Corp.,* 360 Md. 1, 756 A.2d 548, 553 (2000).

■ In this case, Mowbray has failed to establish that El–Rashed owed him a duty of care. Although El–Rashed was a party to the Agreement of Sale, it is well settled in Maryland that "[a] contractual obligation, [in and of] itself, does not create a tort duty. Instead, the duty giving rise to the tort action must be independent of the contractual obligation[.] Mere failure to perform a contractual duty, without more, is not an actionable tort." *See Mesmer v. Maryland Automobile Ins. Fund,* 353 Md. 241, 725 A.2d 1053, 1058 (1999). Applying these principles, the Fourth Circuit has clearly stated that it will not recognize a negligent misrepresentation claim "premised only upon a breach of a contractual obligation when the contract does not provide for the bringing of such a claim and the parties are equally sophisticated." *Sun–Lite Glazing Contractors, Inc. v. J.E. Berkowitz, L.P.,* 37 Fed.Appx. 677, 680 (4th Cir.2002) (Unpub.); *citing Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.,* 991 F.2d 94, 98 (4th Cir.1992) ("Equally sophisticated parties ... should be held to only those duties specified by the agreed-upon contractual terms and not to general tort duties imposed by state law.")

The record in this case establishes that Mowbray had approximately 35 years of experience as a real estate broker and developer. *See Mowbray Dep,* 4–6. Accordingly, there is every reason to assume that he was in a position of equal bargaining power vis-a-vis El–Rashed in negotiating the duties imposed by the Agreement of Sale. Furthermore, Mowbray has failed to establish the kind of "special relationship" or "intimate nexus" with El–Rashed that triggers an independent, non-contractual duty of care. *See, e.g., Jacques v. First National Bank,* 307 Md. 527, 515 A.2d 756 (1986); *Giant Food, Inc. v. Ice King, Inc.,* 74 Md.App. 183, 536 A.2d 1182 (Md.1988). Indeed, it is apparent from the record before us that Mowbray's relationship with El–Rashed begins and ends with their signatures on the Agreement of Sale. Accordingly, we are reluctant to hold that El–Rashed owed Mowbray a duty of care.

■ Insofar as Mowbray claims that Zumot is guilty of negligent misrepresentation, the analysis is more complicated. Unlike El–Rashed, Zumot personally communicated with Mowbray over the course of approximately one year concerning Mowbray's acquisition of the Brexton. Furthermore, Zumot hired the subcontractors who repaired the Brexton's roof and windows, and was therefore uniquely capable of predicting (and later evaluating) the quality of their performance. In light of these considerations, the Court is satisfied that Zumot had an "intimate nexus" with Mowbray and was accordingly subject to an independent tort duty of care.

■ Having established that Zumot owed him a duty of care, Mowbray is still required to prove, *inter alia*, that a reasonable person in Zumot's situation would have known that the subcontractors hired to repair the Brexton's roof and windows would perform incompetently. *See Restatement (Second) of Torts*, § 552(1).[8] At this point in the proceedings, however, the record raises questions concerning Zumot's state of mind at the time the subcontractors were retained. Although Mowbray has presented evidence that Zumot chose the lowest of two bidders[9] in selecting a subcontractor to repair the Brexton's roof[10] (and that the winning bid was approximately one-eighth the size of its only competitor), a fair-minded juror might nevertheless conclude that Zumot had no reason to suspect that the winner of the contract would perform in a substandard fashion. This dispute of fact must be resolved by a jury at trial.

In sum, Mowbray has failed to establish that El–Rashed owed him a duty of care, and a factual dispute exists as to whether Zumot acted negligently in assuring Mowbray that the work on Brexton would be taken care of. Accordingly, we hold that Mowbray is not entitled to summary judgment on his negligent misrepresentation claim.

### B. *The Defendants' Motion for Summary Judgment:*

The Defendants make eight arguments in support of their motion for summary judgment. Five are procedural in nature, and the remaining three address the merits of Mowbray's claims for breach of contract and negligent misrepresentation. Each is addressed below.

#### i. *Standing*

■ The Defendants first contend that Mowbray lacks standing because he does not own the Brexton in his individual capacity. If anyone has been harmed in this case, the Defendants argue that it is Park Avenue LLC (the entity that owns the Brexton) or Brexton LLC and Park &

---

**8.** Section 522(1) of the Second Restatement provides: "One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, *if he fails to exercise reasonable care or competence in communicating the information.*" (Emphasis supplied).

**9.** At his deposition, Zumot testified that he received two bids from subcontractors to repair the Brexton's roof, one for $635,000 and the other for $78,000. *Zumot Dep.* 206–209. Zumot also testified, however, that his "policy is to always get three bids," although he cannot recall obtaining another bid in this particular instance. *Id.*

**10.** Mowbray has also presented evidence that Zumot retained a subcontractor to repair the Brexton's windows for $160,000 in June 2003. This bid was $88,000 less than the estimate submitted by a different bidder in September 2001. *Zumot Dep.*, 209, 288.

Tyson LLC (the entities that own Park Avenue). *Def.'s Mem.*, 16–17. Accordingly, the Defendants argue that Mowbray is not a proper party and urge that his suit be dismissed.

Irrespective of who "owns" the Brexton, the fact remains that Mowbray—and not Park Avenue, Brexton or Park & Tyson—is named as a party to the Agreement of Sale. Under established principles of contract law, Mowbray is therefore the proper party to sue for a breach of the Agreement's terms. *See, e.g., Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir.2000) ("One can readily recognize that … the party to a breached contract bears the kind of claim that he may press in court.")

■ Furthermore, Mowbray's claim for negligent misrepresentation is based in part on Zumot's oral assurances that the work on the Brexton would be taken care of. As we have already discussed, Zumot had an "intimate nexus" with Mowbray and was consequently subject to an independent duty of care. As the party to whom that duty runs, Mowbray has standing to sue for injuries proximately caused by Zumot's negligence. Accordingly, we reject the argument that Mowbray is not a proper party.

### ii. *Notice of Claim*

■ The Defendants' second argument is that Mowbray's suit is time-barred pursuant to Paragraph 11(d) the Agreement of Sale, which provides that the Purchaser's right "to make a claim against [the] Seller for … breach of representation, warranty, or covenant [ ] shall survive the Closing … but shall expire [after two years]." According to the Defendants, Mowbray was required under this provision to sue within two years of the Closing in order to avoid the expiration of his claim. *See Def.'s Mem.*, 18–19. Observing that Mowbray did not file his complaint

until May 12, 2006—more than two and a half years after the November 10, 2003 Closing date—the Defendants contend that this lawsuit is untimely.

The Defendants' position rests on a misinterpretation of Paragraph 1 1(d), which clearly suggests that Mowbray was not required to *file suit* in order to preserve his claim, but only to notify the Seller "of the existence of the [c]laim in question." This reading is supported by the plain language of the agreement: although Paragraph 11(d) expressly provides that "[a]ny [c]laim for which a Claim Notice is not delivered [ ] to Seller on prior to [November 10, 2005] shall be … rendered null and void," it fails to mention any requirement that the Purchaser file a complaint or otherwise initiate a lawsuit. Had the parties intended that Mowbray be required to bring suit in order to preserve his claim, they could have inserted language to that effect, as they did to memorialize the requirement that a "Claim Notice" be filed on or before November 10, 2005. In the absence of such language, we decline to hold that Mowbray was required to file a complaint in order to avoid the expiration of his claim.

■ To determine whether Mowbray properly preserved his claim, we must decide whether his November 4, 2005 letter to Zumot constitutes a "Claim Notice" within the meaning of Paragraph 11(d). According to that provision, a Claim Notice must "contain a reasonable description of the nature of the [c]laim[,] or the facts, circumstances, conditions or events then known to [the] Purchaser which give rise to the claim in question." In addition, the Claim Notice must be delivered to the Seller on or prior to November 10, 2005.

In this case, Mowbray's letter to Zumot clearly contains a "reasonable description" of the facts and circumstances giving rise to his claims against the Defendants. In

the letter, Mowbray alleges that "the sellers of Park Avenue LLC"—i.e., El-Rashed, Rainbow, and Salt—failed to repair the Brexton's roof, windows, and gutters in accordance with the sales agreements. Although the Defendants correctly observe that Mowbray demanded payment under the Guaranty Agreement and not the Agreement of Sale, it is apparent from the face of the letter that the facts alleged by Mowbray would also support liability under the Agreement of Sale. Accordingly, we have no trouble concluding that Mowbray's letter to Zumot adequately describes the claims now before us.

Similarly, we also conclude that Mowbray's letter to Zumot satisfies Paragraph 11(d)'s requirement that the Claim Notice be delivered to *the Seller* on or before November 10, 2005. Although it is true that Zumot is not a party to the Agreement of Sale—and therefore not a "Seller" in his own right within the meaning of Paragraph 11(d)—he nevertheless signed the agreement in his capacity as "Executive Officer" and "Member" of Rainbow and Salt, respectively. Furthermore, Zumot was the only person with whom Mowbray negotiated concerning the repairs to the Brexton's roof and windows.[11] Under these circumstances, Mowbray pursued the most reasonable course of action available to him to inform the Seller—i.e., El-Rashed, Rainbow and Salt—of his claims. We hold, therefore, that Mowbray's letter to Zumot constitutes notice "to the Seller" within the meaning of Paragraph 11(d).

Having complied with the requirements of Paragraph 11(d), Mowbray preserved his right to bring a claim against the Defendants for breach of representation, covenant, or warranty. Accordingly, we are satisfied that the present action was timely filed in accordance with the Agreement of Sale.

### iii. *Limited Liability (Zumot)*

The defendants argue that Zumot cannot be personally liable for breach of contract because he is not a party to the Agreement of Sale. We agree. The general rule in Maryland is that "a person cannot be held liable under a contract to which he was not a party." *Snider Bros., Inc. v. Heft*, 271 Md. 409, 317 A.2d 848 (1974). In addition, members of a Maryland limited liability company are not personally liable "for the obligations of the company, whether in contract, tort, or otherwise, solely by reason of being a member of the limited liability company." Md. Code Ann., Corporations and Ass'ns, § 4A–301. Applying these principles to the case before us, we conclude that Zumot may not be held liable for the obligations of Rainbow and/or Salt under the Agreement of Sale.[12] Accordingly, the Defendants' motion for summary judgment on this point is granted.[13]

11. The parties agree that Mowbray never met or communicated with El-Rashed. *See Def.'s Mem.*, 23–24; *Pl.'s Reply*, 8.

12. Furthermore, although Zumot signed the Agreement of Sale in his representative capacity, that in itself is insufficient to support a finding of personal liability. It is by now well-established that "if an agent fully discloses the identity of his principal to [a] third party, then, absent an agreement to the contrary, he is insulated from liability." *A.S. Abell Co. v. Skeen*, 265 Md. 53, 288 A.2d 596, 597–98 (1972) (citation omitted). In this case, Zumot signed the Agreement of Sale as "Executive Officer" and "Member" of Rainbow and Salt, respectively. By fully disclosing the identity of his principals, Zumot protected himself from personal liability.

13. The Court notes, however, that Zumot remains subject to liability pursuant to the terms of Guaranty Agreement, which limits his exposure to $250,000, excluding costs of collection.

### iv. *Limited Liability (El–Rashed)*

 The Defendants' fourth argument is that El–Rashed is not personally liable for breach of contract because he never communicated with Mowbray and was not a party to the Guaranty Agreement. *Def.'s Mem.*, 24–25. These assertions are true, but also irrelevant. What is relevant is that El–Rashed was a party to the Agreement of Sale, which he signed in his individual capacity. In the absence of fraud, duress, or mutual mistake, the law in Maryland is clear that "one who has the capacity to understand a written document and who reads it and signs it . . . is bound by his signature as to all of its terms." *See, e.g., Binder v. Benson,* 225 Md. 456, 171 A.2d 248, 250 (1961); *Ray v. William G. Eurice & Bros.,* 201 Md. 115, 93 A.2d 272, 278 (1952). Having signed the Agreement of Sale, El–Rashed is bound by all of its representations, whether or not he communicated with Mowbray or assented to the terms of the Guaranty Agreement. Accordingly, we reject the Defendants' argument that El–Rashed cannot be held personally liable for breach of contract.

### v. *Breach of Contract*

Turning to the merits of Mowbray's complaint, the Defendants contend that no breach of contract occurred because all of the work required by the Agreement of Sale was completed prior to settlement. According to the Defendants, Mowbray "concedes," in his Answers to Interrogatories Nos. 2 and 3, that "the Defendants hired contractors who performed the repairs and installations required under the parties' contracts." *Def.'s Mem.*, 20. Insisting that the Agreement of Sale makes no representations concerning the workmanlike quality of the contractors' performance, the Defendants assert that "there is simply no dispute of fact" that they performed under the contract and are entitled to judgment as a matter of law. *Id.*, 21.

As we have already explained, however, the record discloses material questions of fact concerning the terms of the agreements through which Mowbray assumed ownership of the Brexton. Specifically, the "new roof and windows" language contained in the Land Purchase Agreement (and incorporated into the Agreement of Sale) is sufficiently ambiguous that a reasonable factfinder could fairly conclude that the repairs to the Brexton were required to comply with industry standards. Because this question of fact must be resolved by a jury at trial, the Defendants have failed to establish that they are entitled to summary judgment.

### vi. *Waiver*

 Assuming, *arguendo*, that a breach of contract occurred, the Defendants' next argument is that Mowbray waived his right to complain. Emphasizing that Mowbray inspected the Brexton on at least two occasions prior to November 10, 2003, the Defendants contend that he proceeded to settlement "with full knowledge of all of the pertinent circumstances[.]" *Def.'s Mem.*, 22. Accordingly, the Defendants argue that Mowbray waived any right to later complain that the repairs to the roof and windows did not comply with industry standards. *Id.*

There are two flaws in the Defendants' argument. First—and as we have already noted—the Sellers' representation that all repairs to the Brexton were completed prior to settlement survived the Closing pursuant to the Agreement of Sale. As a result, Mowbray was not subject to a duty of reasonable diligence, as would have been the case if the Sellers' representations were extinguished at settlement. *See, e.g., Randolph Hills, Inc. v. Shoreham Developers, Inc.,* 266 Md. 182, 292 A.2d 662, 668 (1972) (When contractual representations survive the settlement, "a pur-

chaser may continue to rely on the covenants in the contract, possibly even when he has knowledge of countervailing facts.") Accordingly, Mowbray did not waive his breach of contract claim by merely proceeding to settlement.

Moreover, even assuming that Mowbray was under a duty of reasonable diligence, the Defendants have failed to establish that any of the allegedly defective repairs were readily discoverable at the time of his inspections. Absent such evidence, we decline to hold that Mowbray intentionally relinquished his right sue for breach of contract. *See, e.g., Kandalis v. Paul Pet Construction Co.,* 210 Md. 319, 123 A.2d 345 (1956) (Where defects are not known or discoverable, acceptance of the property does not discharge the purchaser's right to damages). The Defendants' motion for summary judgment on this point will therefore be denied.

### vii. *Negligent Misrepresentation*

The Defendants' seventh argument is that Mowbray has not come forward with any evidence of negligent misrepresentation. Insofar as Mowbray seeks recovery from El–Rashed, the Defendants are correct. As we have already discussed, Mowbray has failed to establish that El–Rashed owed him an independent duty of care. Accordingly, El–Rashed cannot be held liable for negligent misrepresentation, even if he is ultimately held liable for breach of contract. The Defendants are therefore entitled to summary judgment on Mowbray's claim against El–Rashed for negligent misrepresentation.

Turning to Mowbray's claim against Zumot, the Defendants contend that there is nothing in the record to suggest that Zumot negligently hired unqualified contractors to repair the Brexton's roof and windows. In light of the evidence before us, however, we conclude that Mowbray has done just enough to create a dispute for the jury.

As we have already mentioned, Mowbray has introduced evidence that Zumot chose the lower of two bids in selecting a subcontractor to repair the Brexton's roof, and that the estimate submitted by the winning bidder ($78,000) was substantially lower than that submitted by the only competitor ($635,000).[14] This evidence is sufficient—although just barely—to raise a material question of fact concerning Zumot's state of mind at the time the subcontractors were retained. Specifically, a fair-minded juror might plausibly conclude that the winning estimate was so low that a reasonable person in Zumot's situation would have been concerned that the bidder would perform incompetently. Accordingly, we decline to excise Mowbray's negligent misrepresentation claim against Zumot at this point in the proceedings.

### viii. *Guaranty*

Finally, the Defendants argue that Zumot is entitled to summary judgment on the Guaranty claims in Counts VI and VII because Mowbray's claims for breach of contract and negligent misrepresentation fail as a matter of law. *Def.'s Mem.,* 27–28. As our discussion thus far makes clear, however, both of Mowbray's claims, to the extent they seek recovery from Zumot, must be resolved by a jury at trial. Should Mowbray prevail on either or both of his claims, Zumot remains subject to liability pursuant to the terms of the Guaranty Agreement.

### IV. Conclusion

For the foregoing reasons, Mowbray's motion for summary judgment is DE-

---

**14.** We have also noted that Zumot hired a subcontractor to repair the Brexton's windows in June 2003 for nearly $90,000 less than the estimate submitted by a different bidder in September 2001.

NIED. Insofar as the Defendants contend (1) that Zumot is not subject to personal liability under the Agreement of Sale, and (2) that El–Rashed is not liable for negligent misrepresentation, their motion for summary judgment is GRANTED. In all other respects, however, the Defendants' motion is DENIED. A separate order follows.

It is so ORDERED this 30th day of January, 2008.

### ORDER

For the reasons stated in the memorandum of even date, the Court hereby:

(i) GRANTS IN PART and DENIES IN PART the Defendants' Motion for Summary Judgment (Docket No. 14);

(ii) DENIES Mowbray's Motion for Summary Judgment (Docket No. 15);

(iii) STRIKES as unauthorized Mowbray's "Post–Hearing Brief" (Docket No. 25);

(iv) STRIKES as unauthorized the Defendants' Response to Mowbray's "Post–Hearing Brief" (Docket No. 26); and

(v) SCHEDULES a telephone conference call for March 3, 2008 at 5 p.m. to set a date for trial.[15] Counsel for Mowbray is directed to initiate the call.

It is so ORDERED this 30th day of January, 2008.

---

15. In accordance with Paragraph 22(c) of the Agreement of Sale, the trial of this matter will be scheduled as a non-jury trial. If Mowbray believes he is entitled to a jury trial notwithstanding the stipulation in the Agreement of Sale, he is directed to file a memorandum in support of his position within 10 days of the date of this order. The Defendants' reply will be due one week later.